**A. C. DRINKWATER, JR., FARMS, INC.,**
**Plaintiff-Respondent,**

v.

**ELLOT H. RAFFETY FARMS, INC.,**
**Defendant-Appellant,**

**and**

**Levee District No. 3 of Mississippi County, Missouri, Defendant.**

**A. C. DRINKWATER, JR., FARMS, INC.,**
**Plaintiff-Respondent,**

v.

**ELLOT H. RAFFETY FARMS, INC.,**
**Defendant,**

**and**

**Levee District No. 3 of Mississippi County, Missouri, Defendant-Appellant.**

**Nos. 9259, 9263.**

Missouri Court of Appeals,
Springfield District.

May 11, 1973.

James D. Sickal, Sikeston, for plaintiff-respondent.

L. D. Joslyn and Albert G. Tindall, Charleston, for defendant-appellant Ellot H. Raffety Farms, Inc.

George K. Reeves and Byron D. Luber, Caruthersville, for defendant-appellant Levee District No. 3 of Mississippi Co., Missouri.

BILLINGS, Judge.

Plaintiff (herein Drinkwater) had judgment for $1,290.17 [attorney fees and costs] against defendant Raffety Farms, Inc., (herein Raffety). Plaintiff also received a judgment for $849.48 [sale price of timber] against defendant Levee District (herein Levee), and the title to a 4.1 acre tract of real estate was quieted in plaintiff and against Levee. The appeals of Raffety and Levee were consolidated in this court and we affirm the judgment against Levee but reverse the judgment against Raffety.

On October 1, 1963, Raffety conveyed by warranty deed the 4.1 acre tract, together with other lands to Drinkwater. In July of 1969 Levee entered the property and cut and sold timber, receiving the sum of $849.48 therefor.

In 1970 Drinkwater filed this suit in three counts. The first count was against Raffety for damages [purchase price], attorney fees and costs for breach of warranties in its deed. Count two was against Levee and was to quiet the title to the tract, while count three sought damages from Levee for the cutting and conversion of the timber.

Plaintiff's count against Raffety set forth the warranties in the deed and alleged that Raffety "has not warranted and defended the premises and the quiet enjoyment thereof, to plaintiff, but on the contrary, defendant Levee District No. 3, who at the time of making said deed, claimed to have had, and at the present time claims to continue to have lawful right to the premises by an elder and better title" and then set forth Levee's entry, cutting and conversion of the timber. Raffety's motion to dismiss this count for failure to state a cause of action was overruled. Raffety filed a general denial to count one. Levee filed a general denial to count two and as to count three filed a general denial and also alleged title in itself by reason of deeds and the doctrine of after-acquired title; further, by limitations under § 516.-070, RSMo., 1969, V.A.M.S., [abandoned].

The case was submitted to the court sitting without a jury on an agreed statement of facts and exhibits, some testimony offered by Levee, and, evidence by Drinkwater as to attorney fees and costs.

Charles French acquired title to the tract as his separate property in 1899. In 1822 he and his wife, Mary, executed a deed of

trust on the property to Coon as trustee for the Bank of Chester to secure an indebtedness. In 1923 Levee received a warranty deed to the tract from Charles and Mary. In March of 1925 the deed of trust was foreclosed and by trustee's deed title to the tract was conveyed to I. C. Beare. The next month Beare quitclaimed the premises to Charles French and Mary French. By subsequent conveyances Raffety acquired title and conveyed to Drinkwater.

It was also agreed that Raffety and his predecessors in title paid the real estate taxes from 1920 through 1963 and that since 1964 the taxes had been assessed against and paid by Drinkwater.

Levee's testimony adds little. Barnhill, "agent or superintendent" for Levee, referred to a "right-of-way" map [which was not properly identified but reluctantly received in evidence over objection—and which has not been filed in this court by Levee] and stated the tract was on the land side of the levee but "considered" a part of the levee right-of-way. He first said timber was cut off the tract only one time, in July of 1969, then added that timber was also cut by Levee another time—in the 1962–1964 period. Johnson grass was poisoned by Levee around the outside boundary of the tract, "at the berm or foot of the levee", but not on the tract itself. Levee's other witness said he lived on Joe Moore's place, which adjoined the tract, from 1921 until 1969; that Moore [at some undisclosed point in time reputed to have been secretary of Levee] permitted the witness to pasture some cattle on the tract —at some undisclosed time.

Based upon the foregoing the court arrived at the following findings and conclusions: Raffety was on October 1, 1963, the fee simple owner of the tract, and on said date Raffety conveyed to Drinkwater who became the fee simple owner and entitled to possession; Levee claimed title by an after-acquired title but Drinkwater's title was superior and paramount to Levee's; Levee cut and sold timber from the tract in 1969 and this act constituted a trespass in violation of Drinkwater's property rights; that Raffety's deed covenanted and warranted that it would defend the title and Levee's cutting timber and claiming title was sufficient to show its claim of superior title and that Raffety being made a party to the suit was sufficient notice to Raffety of Levee's claim; that Raffety breached its warranty to Drinkwater. Judgments were thereupon entered as stated above.

■ As previously noted Charles E. French acquired title to the tract in 1899 —as his separate property. The only interest that his wife, Mary, had in 1922 when the deed of trust was given to the Bank of Chester was inchoate right of dower. Her joinder in the deed of trust relinquished her dower as provided in what is now § 442.030, RSMo., 1969. Owens v. Owens, 347 Mo. 80, 146 S.W.2d 569 (1940). Thus, at the time Levee obtained its deed in 1923 Mary did not have any interest in the tract—only a potential interest of inchoate dower in the event the deed of trust was paid and released. The foreclosure of the deed of trust in 1925 extinguished her dower. § 443.290, RSMo., 1969; Owens v. Owens, supra.

Levee seeks to invoke the provisions of what is oft-called the doctrine of after-acquired title, or estoppel by deed, and codified in § 442.430, RSMo., 1969. Levee argues that by Mary's joinder with her husband in the warranty deed to Levee the doctrine applies since following the 1925 foreclosure of the deed of trust the purchaser at the sale subsequently quitclaimed the tract to Charles French *and* Mary French.

Aside from any problem of application of the doctrine where property was owned individually by a husband and the title was after-acquired by the husband and wife, creating a tenancy by the entireties, we are in agreement with the conclusion of the trial court that the doctrine is not here applicable.

While it is true that Mary is described in the deed as a co-grantor with her husband, this is not the controlling factor that Levee urges. To convey inchoate dower a wife is not only required to join in a properly acknowledged conveyance, she must also be named as a grantor to bar her dower; it is not enough that she signs and acknowledges the deed. McFadden v. Rogers, 70 Mo. 421 (1879). The 1923 deed to Levee refers to *party* of the first part and acknowledges payment of the consideration to *him*. In the habendum clause "C. E. French" covenants that *he* is lawfully seized of an indefeasible estate in fees; that *he* has good right to convey; that there are no encumbrances done or suffered by *him* or those under whom *he* claims; and, that *he* will warrant and defend the title, etc. In the signature clause the deed recites: "In witness whereof, the said *party* of the first part has hereunto set *his* hand . . ..", followed by the signatures of C. E. French and Mary E. French. (emphasis added)

The doctrine enunciated in § 442.430 applies only "Where a grantor, by the terms of his deed, undertakes to convey to the grantee an indefeasible estate in fee simple absolute . . . ." The instant deed clearly limited the covenants to the husband to the exclusion of his wife. And, § 442.030, provides in part, that " . . . [N]or shall any covenant in any deed conveying the property of the husband bind the wife except so far as may be necessary to effectually convey from the . . . wife, so joining therein and now owning the property . . . all the right, title and interest expressed to be conveyed therein . . . ."

Here, Mary in 1923, had no right, title or interest (other than possible inchoate dower) in the tract and we hold she did not undertake to convey an indefeasible fee under § 442.430. Brawford v. Wolfe, 103 Mo. 391, 15 S.W.2d 426 (1891); Conrey v. Pratt, 248 Mo. 576, 154 S.W. 749 (1913); Stone v. Fry, 191 Mo.App. 607, 178 S.W. 289 (1915); Seeberger v. Tutt, 224 S.W. 72 (Mo.App.1900). The trial court correctly ruled that the doctrine of after-acquired title was not applicable and its judgments quieting title in Drinkwater and awarding damages against Levee are affirmed.[1]

This brings us to Raffety's appeal of the judgment entered against it on count one for attorney fees and costs for breach of warranty. Raffety contends: (1) error in the overruling of its motion to dismiss since plaintiff failed to allege a superior or paramount title in Levee; and, (2) the judgment cannot stand because the court found that Drinkwater received the fee simple title to the tract from Raffety, the court found that Levee had no title to the tract, and the 1969 entry and conversion of timber was a trespass for which Levee was liable to Drinkwater. We find ourselves in agreement with Raffety on both propositions and for the reasons hereinafter appearing reverse the judgment.

Drinkwater's petition against Raffety alleged "claims" of Levee concerning the title to the tract and failed to allege a superior and paramount title in Levee. Raffety's breach was alleged as its failure to warrant and defend the premises and the quiet enjoyment thereof.

In Mackenzie v. Clement, 144 Mo.App. 114, 129 S.W. 730 (1910), plaintiff sought to recover attorney fees incurred in the defense of a title purchased from defendant. The petition alleged that third parties had "a substantial and lawful claim to the

---

1. This ruling renders it unnecessary for us to consider the additional point raised that Levee was not authorized by statute to acquire the fee in realty. In 1923 § 4672, RSMo., 1919 [now § 245.385, RSMo.,] limited a levee district's acquisition to a "right-of-way". It was not until 1929 that § 11020, RSMo., 1929 [now § 246.140, RSMo., 1969] (relied upon by Levee) was enacted and authorized drainage or levee districts, under certain circumstances, to purchase land in fee. We also leave to future authors any question as to who has standing to raise the former question.

property" and that although plaintiff had prevailed against the claims of the third parties in a prior suit the "claims" were among the class warranted and covenanted by defendant in his warranty deed. The trial court sustained defendant's demurrer on the ground that the petition did not state facts sufficient to constitute a cause of action. In affirming, the court in Mackenzie said (129 S.W. at 731): "We think it would be neither just nor safe to adopt the view asserted by plaintiff. To allow the mere good faith of the grantee, based on the formidable appearances of the claim made by one assailing his title, to be the criterion governing the liability of the warrantor on his warranty against 'lawful claims', would render the position of such warrantor exceedingly hazardous. *The warranty is intended to cover real claims, and not those which only appear to be real. The claim of the claimant must be superior to the title conveyed.* It is said in 1 Jones on Real Property, § 985, that: 'The grantor does not warrant that no one shall make a claim of adverse title, but only that no one shall make a claim which shall be adjudged valid and paramount to the title conveyed by his deed.' And the same is said in Tiedeman on Real Property §§ 618, 619, and 8 Am. & Eng. Ency. of Law, 98, 101.' The covenant does not protect against any but lawful claims which negative and title that the deed purports to convey.' [citing authorities]."

▮ In order to constitute a breach of the covenant of warranty the title or right under which the covenantee is evicted, actually or constructively, or to which he yields, must be paramount and have been in existence at the date the warranty was made. A title or right is superior and paramount where it prevails in an action or is successfully asserted. Mackenzie v. Clement, supra; Litzelfelner v. Cotner, 119 S. W.2d 447 (Mo.App.1938); Collins v. Baker, 6 Mo.App. 588 (1879); 21 C.J.S. Covenants § 111; 20 Am.Jur.2d, Covenants, § 124.

Drinkwater argues that it is not essential in a suit against a grantor on covenants of warranty to show a paramount and superior title in third persons, citing Coleman v. Clark, 80 Mo.App. 339 (1899), and, Lasswell Land & Lbr. Co. v. Langdon, 204 S. W. 812 (Mo.App.1918). Drinkwater also contends that its claim is based on the warranties contained in the words "grant, bargain and sell" in the deed and makes the statement in its brief that "in the present case Levee was in possession and claiming ownership, and took a lawsuit for Drinkwater to be put in possession and recover damages for the *wrongful trespass.*" (our emphasis)

It is true that § 442.420, RSMo., 1969, provides that in a conveyance limiting a fee simple title the words "grant, bargain and sell", unless restrained by express terms in the conveyance, are construed to express the following covenants of title: (1) that the grantor was seized of an indefeasible estate in fee simple; (2) that the estate was free from encumbrances done or suffered by the grantee or any person under whom he claims; and, (3) for further assurances. And as noted by Dean Willard Eckhardt [Possessory Estates, Future Interests and Conveyances in Missouri, 23 V.A.M.S., Commentary, § 87, pages 73–74], an express covenant to warrant and defend [quiet enjoyment] is added in the modern Missouri deed—thus the term "warranty deed".

▮ In Missouri, a warranty deed contains the following covenants: seisin, good right to convey, against encumbrances, further assurances, quiet enjoyment and warrant and defend. It should be noted that the covenants of seisin, good right to convey and against encumbrances are warranties or representations of an *existing* state of affairs and if there is any breach of these covenants it is when the conveyance is made [in praesenti]. On the other hand, the covenants for further assurances, quiet enjoyment and to warrant and defend are strictly covenants and breach of these covenants takes place at some future time other than at the date when the conveyance is made. Rawle, Covenants for Title § 205 (5th ed. 1887);

Hunter, Covenants for Title As Protection to Remote Grantees; 3 Mo.L.Rev. 48 (1938); Hardy, Measure of Damages Where Breach of Covenant for Title, 4 Mo.L.Rev. 194 (1939); Simonton, Statutory Covenants for Title in Missouri, 28 U. of Mo. Bull.L.Ser. 3 (1923); 20 Am.Jur.2d Covenants, §§ 50–100. "The covenant for quiet enjoyment is understood as covenanting that no one with a better right to possession will interfere with the grantee's possession, and it is breached, if at all, by eviction. The covenant for warranty is understood as covenanting that one will warrant and defend against all lawful claims of third persons, and it is breached, if ever, by the warrantor failing to so defend." Hunter, supra, 3 Mo.L.Rev. at 50.

In Coleman v. Clark, supra, and Lasswell Land & Lbr. Co. v. Langdon, supra, relied upon by Drinkwater, the court in both cases determined that the covenant of seisin had been breached since at the time of the conveyances the grantors did not have possession of the lands and in fact third parties were in possession claiming title by adverse possession. As a result, the grantees, in Coleman and Lasswell had been compelled to bring the possessory action of ejectment to obtain possession of the lands involved.

In the instant case there was no pleading or proof of breach of the covenant of seisin. Drinkwater's theory of recovery both against Raffety and Levee was based on the latter's trespass and conversion of timber. Our conclusion in this regard finds support in the statement of Drinkwater's counsel to the court outlining its case: "The plaintiff has filed in three counts. One count against the Levee District alleges that the plaintiff is the owner by virtue of this deed from Raffety Farms and alleges that the defendant [Levee] claims some interest and asks the Court for a decree to quiet the title to this 4.1 acre tract. In addition, an additional count against the Levee District for treble the amount of $849.48 on the theory that the plaintiff was the owner and the Levee District *trespassed* and cut timber off the land in violation of the statute which is set out in the pleadings. In the *alternative* the plaintiff has alleged that the defendant Levee District is claiming a title and *that if the Levee District does have the title to this property*, then the plaintiff is asking for a return of the purchase price for this 4.1 acre plus interest from the date of the deed and attorney's fees on the theory that the defendant Raffety warranted the title to the 4.1 acres, sold it to the plaintiff, which the plaintiff paid for, and *if* the Levee District owns the title, then he has conveyed something that he doesn't have and should return the purchase price plus the interest and attorney fees." (emphasis added)

■ Drinkwater cannot on appeal convert an action for trespass and breach of warranty into a suit for possession. It is bound by its trial theory of the case. Huter v. Birk, 439 S.W.2d 741 (Mo.1969); Mo.Digest, Appeal and Error, ■ 852.

■ It is generally held that in an action for breach of covenant of warranty, or for quiet enjoyment, that it is necessary to clearly allege an eviction, actual or constructive, under a lawful and paramount title. Assuming, without deciding, that Levee's trespass and conversion of timber constituted an eviction of Drinkwater [Scott v. Tanner, 208 S.W. 264 (Mo.App.1919)], and that the petition sufficiently alleged such an eviction, the pleading was, nevertheless, fatally deficient in not alleging a superior and paramount title in Levee. Mackenzie v. Clement, supra; 21 C.J.S. Covenants § 125(4); 20 Am.Jur.2d, Covenants, § 121. And, in order for Drinkwater to recover against Raffety it was incumbent that there be both pleading and proof of the superior and paramount title in Levee. We observe that in such event Drinkwater's judgments against Levee could not stand. As correctly stated by Drinkwater's counsel there could only be recovery against Raffety for breach of

warranty [assuming sufficient pleadings and proof] in the event the court determined Levee's title to be superior and paramount. Even if it be assumed that Drinkwater's petition against Raffety was sufficient to state a cause of action for breach of warranty [quiet enjoyment] the determination that Levee's claim was not in fact superior and paramount would negate any liability of Raffety under its covenants in the deed. Raffety is not liable under its covenants for the acts of trespasser-Levee. Drinkwater, being successful in establishing its title against one who was without any valid claim to the premises, cannot recover from its grantor the expenses of the suit since the adverse claim of Levee did not involve a breach of covenants by Raffety. Mackenzie v. Clement, supra; Luther v. Brown, 66 Mo.App. 227 (1896); See Annot., 105 A.L.R. 729.

The judgments against Levee are affirmed. The judgment against Raffety is reversed.

TITUS, C. J., and STONE and HOGAN, JJ., concur.